# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

DAVID DONALD CLINE,

Plaintiff,

v.

A. ROBERTS, et al.,

Defendants.

Case No.  19-cv-02175-BLF

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF 61, 62]

This case arises out of an encounter between the Santa Cruz County sheriffs and Plaintiff David Cline and his late mother, Kathryn Cline. What began as a welfare check ended with Mr. Cline knocked unconscious by a taser and his mother left to fend for herself after a fall that broke her hip.

Mr. Cline has brought suit against the County of Santa Cruz, Sheriff James Hart, and deputy sheriffs Adam Roberts and Ethan Rumrill. *See* Second Am. Compl. ("2AC"), ECF 47. Mr. Cline brings claims under 42 U.S.C. § 1983 for prolonged detention, lack of probable cause to arrest, excessive force, and *Monell*[1] liability; California Civil Code § 52.1, the "Bane Act"; and a common law claim for assault. *See* 2AC. Before the Court are dueling motions for summary judgment. *See* Pl.'s Mot., ECF 61. Defs.' Mot., ECF 62. For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART Mr. Cline's motion and GRANTS IN PART and DENIES IN PART Defendants' motion.

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)

## I.     BACKGROUND

On July 15, 2017, Mr. Cline and his mother were living in their white Dodge pickup with a camper shell and parked at Felton Covered Bridge Park. Decl. of Jonathan Gettleman ("Gettleman Decl."), Ex. M, Rumrill Incident Report 18, 20, ECF 69-3. Ms. Kathryn Cline was 87 years old at the time. *Id.* 16.

Earlier that day, while walking to the public bathroom in the park, Ms. Cline fell, landing on her hip and hitting her head. Decl. of Elizabeth M. Caballero ("Caballero Decl."), Ex. C, Rumrill Dep. 62:6-10, ECF 61-1; Ex. N, Cline RFA 231, ECF 61-1. Mr. Cline reported to the officers that, in the process of falling, she re-injured a pre-existing head wound. Ex. C, Rumrill Dep. 62:1-13, ECF 61-1. Mr. Cline picked her up, carried her to the car, and went across the street to a Valero gas station to get ice for her leg. Caballero Decl., Ex. F, David Cline Dep. 106:4-13, ECF 61-1. Mr. Cline testified that he tried to convince his mother to go to the hospital, but, according to him, she wanted to wait and see how she felt after the ice and  said about her hip, "it doesn't hurt that much." *Id.* 106:4-22. Bystanders who were familiar with the Clines also testified that Mr. Cline was trying to convince his mother to go to the hospital, but she was refusing. Gettleman Decl., Ex. Z, Decl. of Jonney Hughes, ECF 69-5; Ex. AA, Decl. of John Welborn, ECF 69-5.

Unbeknownst to the Clines, a witness had contacted the Santa Cruz County Sheriff's Office and requested a welfare check for Ms. Cline. Ex. M, Rumrill Incident Report 18, ECF 69-3. The parties do not dispute that Ms. Cline's injuries occurred one to three hours before the deputies arrived on the scene. Ex. C, Rumrill Dep. 60:21-25, ECF 61-1. Defendant Roberts testified that, at the time of the incident, he was not familiar with his department's adult abuse policy, including the policies for investigating and reporting abuse. Caballero Decl., Ex. A, Roberts Dep. 24:24-26:10, ECF 61-1. Defendant Rumrill testified that he was not familiar with aspects of the policy as well. Ex. C, Rumrill Dep., 105:7-106:22, ECF 61-1.

Defendant Rumrill was the first deputy to encounter the Clines, and when he asked Mr. Cline to produce his identification, Mr. Cline refused, stating, "I have rights." Ex. C., Rumrill Dep. 46:14-47:4, ECF 61-1. Defendant Rumrill informed Mr. Cline that he was being detained

United States District Court
Northern District of California

because he was refusing to provide identification. *Id.* 46:22-25. Defendant Rumrill further informed Mr. Cline that he was being detained because he had "a bleeding woman sitting right next to you in your truck." Ex. B., BodyCam Tr. 38:9-12, ECF 62-5. Mr. Cline informed Defendant Rumrill that this woman was his mother. *Id.* 38:13. Mr. Cline also produced his identification as requested shortly after being informed that he was detained. Ex. C., Rumrill Dep. 119:14-18, ECF 61-1. This detention lasted 40 minutes. *Id.* 47:23-48:10. Mr. Cline informed Defendant Rumrill that his mother might have a broken hip. Ex. B, BodyCam Tr. 49:3-12, ECF 62-5.

The Parties describe Mr. Cline's behavior during the 40-minute encounter in significantly different ways. Mr. Cline claims that he sat in the vehicle and politely answered the deputies' questions. Pl.'s Mot. 5. Defendants claim that Mr. Cline was "agitated." Defs.' Mot. 9.

The parties do not dispute that Mr. Cline told Defendant Rumrill that he would take his mother to the hospital prior to Defendant Rumrill detaining him. Ex. C., Rumrill Dep. 62:19-21, ECF 61-1 ("Q. All Right. And within the first 25 seconds, he told you, 'I'm taking her to the hospital,' correct? A. Yes."). Defendant Rumrill also acknowledged that Mr. Cline was not the cause of his mother's injuries. *Id.* 62:5-13, 108:6-13 ("I had no indication that he had ever been physically abusive towards her."). The Parties also do not dispute that Ms. Cline clearly and affirmatively refused to go to the hospital shortly after Defendant Rumrill began talking to the Clines. *Id.* 48:11-15. Ms. Cline repeated this sentiment multiple times. *Id.* 48:11-20. Mr. Cline explained that he believed Ms. Cline's pre-existing headwound, which had formed a visible protrusion, was a spider bite, and Ms. Cline had previously been to the hospital to have it examined. Ex. B, BodyCam Tr. 37:6-11, ECF 62-5. Defendant Rumrill acknowledged that he had no information that Ms. Cline's pre-existing head injury required immediate medical treatment prior to her fall in the park on July 15. Ex. C., Rumrill Dep. 111:4-6, ECF 61-1.

Defendant Rumrill started talking to Ms. Cline, and she immediately told him "Well, I don't go to the hospital because they kill you there." Ex. B, BodyCam Tr. 43:18-19, ECF 62-5. Defendant Rumrill called for paramedics. *Id.* 39:8-11; Ex. M, Rumrill Incident Report 19, ECF 69-3. Later in the conversation, she said, "I don't need any medical care," and "I don't want to be

put in the hospital." Ex. B, BodyCam Tr. 50:22, 24-25, ECF 62-5. After speaking with Ms. Cline, Defendant Rumrill acknowledged she was lucid and did not want to go get medical care. *Id.* 52:7-9. He also understood that she could not be forced to go to the hospital unless she was "altered," and Defendant Rumrill stated that he did not think that was the case because "[s]he seems pretty–pretty with it. I mean I had a little conversation with her." *Id.* 57:14-20. Paramedics put a bandage on her head wound. *Id.* 75:19-21.

Defendant Roberts arrived on the scene after the arrival of the paramedics. Ex. B, BodyCam Tr. 53:20-24, ECF 62-5. During the course of the detention, prior to Mr. Cline exiting his car, Defendant Rumrill acknowledged that it would be tough to arrest Mr. Cline "on a felony or arrest him at all." *Id.* 57:1-9; Ex. A., Roberts Dep. 52:19-24, ECF 61-1.

Immediately prior to exiting his vehicle, Mr. Cline again told the deputies that he would drive his mother to the hospital. Ex. C, Rumrill Dep. 66:22-67:2, ECF 61-1. Mr. Cline said that he wanted to take his mother himself versus her going in an ambulance because they could not afford an ambulance, which Defendant Rumrill testified was a reasonable concern. *Id.* 66:22-67:9; Ex. B, BodyCam Tr. 3-11, ECF 62-5.

Defendant Rumrill, despite previously acknowledging that he had no legal authority to force Ms. Cline to go to the hospital, told Mr. Cline that the ambulance was already here, so they were going to take his mother to the hospital. Ex. B, BodyCam Tr. 59:12-13, ECF 62-5. Mr. Cline responded, "No. If you take her, I'm going to commit suicide, okay? Because I can't take any more from you or anybody else" *Id.* 59:14-19. Mr. Cline then exited his vehicle. *See* Caballero Decl., Ex. Q, BodyCam Video, ECF 61-1. Defendant Rumrill testified that neither he nor Defendant Roberts ever told Mr. Cline that he could not exit his vehicle. Ex. C, Rumrill Dep. 87:18-21, ECF 61-1.

The Parties draw different conclusions from the same BodyCam footage, characterizing Mr. Cline's mannerisms and actions quite differently. *See* Pl.'s Mot. 9-11; Defs.' Mot. 11-12. Defendant Rumrill told Mr. Cline to calm down, and Mr. Cline responded, "[h]ey, I'm telling you to fuck off and leave me alone." Ex. B, BodyCam Tr. 59:18-25, ECF 62-5. At this point, the Parties agree that Mr. Cline was agitated. Pl.'s Mot. 10. Defendant Roberts had his bright yellow

4

taser clearly pointed at Mr. Cline. Ex. Q, BodyCam Video, ECF 61-1. Mr. Cline was simultaneously told by Defendants Rumrill and Roberts to turn around and put his hands behind his back. *Id.* Mr. Cline did turn around, but he reached for his car door. *Id.* Defendant Roberts responded by deploying his taser into Mr. Cline's back. *Id.* Mr. Cline instantly fell backwards, splitting open his head on the pavement and knocking himself unconscious. *Id.*; Ex. A, Roberts Dep. 152:3-5, 153:2-8, ECF 61-1. A pool of blood began to form on the pavement. Ex. Q, BodyCam Video, ECF 61-1; Ex. A, Roberts Dep. 153:2-8, ECF 61-1. A witness stated, "I will never forget the sound of David's head cracking open on the pavement. It sounded like someone dropped a watermelon from 10 or 15 feet up in the air." Ex. AA, Decl. of John Welborn, ECF 69-5. The Defendant deputies took the time to handcuff the unconscious Mr. Cline before calling the paramedics to render aid. Ex. Q, BodyCam Video, ECF 61-1; Ex. AA, Decl. of John Welborn, ECF 69-5.

Jacob Ainsworth, a patrol supervisor, arrived on the scene after Mr. Cline had been handcuffed. Gettleman Decl., Ex. E, Ainsworth Dep. 20:22-25, ECF 69-2. After Mr. Cline had been taken away, medical personnel spoke with Ms. Cline about getting medical treatment, and Defendant Rumrill stated, "[o]kay. She's still refusing." Ex. B, BodyCam Tr. 68:21, ECF 62-5. Supervisor Ainsworth testified that Ms. Cline said she did not want to go to the hospital about nine or ten times while he was on the scene. Ex. E, Ainsworth Dep. 27:2-9, ECF 69-2. An EMT officer told Supervisor Ainsworth about Ms. Cline, "Yeah, I mean I can't force her. I can't kidnap her." Ex. B, BodyCam Tr. 81:1-2, ECF 62-5; Ex. E, Ainsworth Dep. 39:12-15, ECF 69-2. Defendants were never able to find the authority to force Ms. Cline to accept medical treatment against her will. Ex. A, Ainsworth Dep. 42:15-21, ECF 69-2.

Supervisor Ainsworth asked two bystanders who told him they recognized Ms. Cline to watch over her. Ex. B, BodyCam Tr. 84:3-8, 87:20-24, ECF 62-5; Ex. E, Ainsworth Dep. 70:8-17, ECF 69-2. He told the bystanders regarding Ms. Cline, "I'm not gonna give up on her, right?" Ex. B, BodyCam Video 101:7, ECF 61-1. He then left her in the park, with no phone, and never came back to check on her. Ex. E, Ainsworth Dep. 76:5-12, ECF 69-2.

Mr. Cline was arrested and cited for violations of California Penal Code 368(b)(1), elder

abuse, and California Penal Code 148(a)(1), resisting, delaying, or obstructing an officer. Gettleman Decl. Ex. P, Citation, ECF 69-3. Supervisor Ainsworth testified that he ultimately authorized the citation. Ex. E, Ainsworth Dep. 78:22-24, ECF 69-2. Supervisor Ainsworth testified that it was Defendant Rumrill who decided to arrest Mr. Cline for elder abuse, and he approved that arrest. *Id.* 79:23-81:8. Supervisor Ainsworth stated that he understood that Defendant Rumrill's basis for arresting Mr. Cline for elder abuse was Defendant Rumrill's belief that Mr. Cline was responsible for his mother and the injuries she sustained. *Id.* 81:4-20. Supervisor Ainsworth also testified that he had no information that Mr. Cline caused his mother's injuries, and all he knew was that Mr. Cline was not taking his mother to the hospital. *Id.* 81:23-82:20. Supervisor Ainsworth also testified that he chose not to do a use of force investigation at the scene and did not deputize another officer to do one, either. *Id.* 50:21-55:24, 57:1-14.

Although charges were initially filed, the district attorney declined to prosecute the case, and the charges against Mr. Cline were dismissed on December 14, 2021. Caballero Decl., Ex. W, Docket Sheet, ECF 61-1.

## II.    LEGAL STANDARD

### A.    Summary Judgment

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   defense or show that the nonmoving party does not have enough evidence of an essential element

2   to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*

3   *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, the

4   Court "does not assess credibility or weigh the evidence, but simply determines whether there is a

5   genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Where the moving

6   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

7   reasonable trier of fact could find other than for the moving party. *Celotex*, 477 U.S. at 325;

8   *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

9       If the moving party meets its initial burden, the burden shifts to the nonmoving party to

10   produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the

11   nonmoving party does not produce evidence to show a genuine issue of material fact, the moving

12   party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the

13   evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

14   nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of

15   evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary

16   judgment. *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal.

17   1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "'Where the record

18   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19   genuine issue for trial.'" *First Pac. Networks*, 891 F. Supp. at 514 (quoting *Matsushita Elec.*

20   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

21   **B.    Qualified Immunity**

22       "The doctrine of qualified immunity protects government officials from liability for civil

23   damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or

24   constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

25   conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S.

26   Ct. 2074, 2080 (2011)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court has set forth a

27   two-part approach for analyzing qualified immunity. The analysis contains both a constitutional

28   inquiry and an immunity inquiry. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir.

United States District Court
Northern District of California

1    2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in

2    the light most favorable to the party asserting the injury, do the facts alleged show the officer's

3    conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the Court determines that a

4    constitutional violation could be made out based on the parties' submissions, the second step is to

5    determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in

6    determining whether a right is clearly established is whether it would be clear to a reasonable

7    officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

8         The Supreme Court recently reiterated the longstanding principle that "the clearly

9    established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500,

10   503 (2019). Defining the right at too high a level of generality "avoids the crucial question

11   whether the official acted reasonably in the particular circumstances that he or she faced." *District*

12   *of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Ricard*, 134 S. Ct. 2012,

13   2023 (2014)). "[A] defendant cannot be said to have violated a clearly established right unless the

14   right's contours were sufficiently definite that any reasonable official in the defendant's shoes

15   would have understood that he was violating it." *Plumhoff*, 134 S. Ct at 2023.

16        Importantly, though, "'it is not necessary that the alleged acts have been previously held

17   unconstitutional' in order to determine that a right was clearly established, 'as long as the

18   unlawfulness [of defendant's actions] was apparent in light of pre-existing law.'" *Bonivert v. City*

19   *of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018) (quoting *San Jose Charter of Hells Angels*

20   *Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005)) (alterations in original).

21   There can be "the rare 'obvious case,' where the unlawfulness of the officer's conduct is

22   sufficiently clear even though existing precedent does not address similar circumstances." *Vazquez*

23   *v. City of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 590). The

24   relevant inquiry is "whether the officer had fair notice that her conduct was unlawful." *Nicholson*

25   *v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct.

26   1148, 1152 (2018) (per curiam)).

27   **III.   DISCUSSION**

28        The arguments in both motions overlap to a significant extent. The Court will first address

8

1    Mr. Cline's request for judicial notice and objections to Defendants' evidence before turning to his
2    motion. The Court will then address any outstanding issues in Defendants' motion.

3        **A.    Request for Judicial Notice**

4        Mr. Cline requests the Court take judicial notice of the following documents: Exhibit U, a
5    true and correct copy of the complaint filed in *People v. David Cline*, No. 17CR05128, (Santa
6    Cruz Cnty. Super. Ct. Aug. 15, 2017), ECF 61-1; Exhibit V, a true and correct copy of the
7    restraining order issued in *People v. David Cline*, No. 17CR05128, (Santa Cruz Cnty. Super. Ct.
8    Aug. 23, 2017), ECF 61-1; Exhibit W, a true and correct copy of the docket sheet in *People v.*
9    *David Cline*, No. 17CR05128, (Santa Cruz Cnty. Super. Ct. Dec. 14, 2017), ECF 61-1; and
10   Exhibit X, a true and correct copy of the Santa Cruz Superior Court minute order in *People v.*
11   *David Cline*, No. 17CR05128, (Santa Cruz Cnty. Super. Ct. Dec. 14, 2017), ECF 61-1. Defendants
12   do not object to this request.

13       A court may take judicial notice pursuant to Federal Rule of Evidence 201(b). Under Rule
14   201(b), a judicially noticed fact must be one that is "not subject to reasonable dispute because it:
15   (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and
16   readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
17   201(b). Public records, including judgments and other court documents, are proper subjects of
18   judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).
19   Accordingly, the Court GRANTS Mr. Cline's request.

20       **B.    Mr. Cline's Objections to Defendants' Evidence**

21       In both his opposition brief to Defendants' motion and his reply brief supporting his own
22   motion, Mr. Cline makes objections to evidence submitted by Defendants. *See* Pl.'s Opp'n 1-4,
23   ECF 69; Pl.'s Reply 1, ECF 70.

24           **1.    Objection Based on Spoliation**

25       First, Mr. Cline moves for sanctions for spoliation because all three sheriffs office
26   employees who were wearing Body Worn Cameras ("BodyCams")—Defendant Rumrill,
27   Defendant Roberts, and Supervisor Ainsworth, who is not a party to this action—turned off their
28   BodyCams at various points while on the scene with Mr. Cline and his mother. Pl.'s Opp'n 1

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1  (citing Ex. A, Roberts Dep. 59:10-20, ECF 61-1; Ex. C, Rumrill Dep. 41:3-43:11, 44:19-45:7,

2  ECF 61-1; Ex. E, Ainsworth Dep. 30:20-23, ECF 69-2). Defendant Rumrill testified that turning

3  off his camera was in violation of department policy, which states "[o]nce activated, the body-

4  worn camera shall remain on continuously until the employee's direct participation in the recorded

5  event is complete." Ex. C., Rumrill Dep. 41:16-43:11, ECF 61-1. Because Mr. Cline has no

6  independent recollection of the events of July 15, 2017 due to the head injury he suffered, he

7  argues that, at a minimum, Defendants should be prohibited from relying on facts outside of the

8  recorded record of events. Pl.'s Opp'n 1. Defendants respond that Mr. Cline does not dispute the

9  accuracy of the BodyCam footage that has been presented, and spoliation only applies to evidence

10  that has been altered, destroyed, or failed to be preserved. Defs.' Reply 5, ECF 71; *see also*

11  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 650 (9th Cir. 2009). The Court agrees with

12  Defendants that there has been no spoliation of evidence, and Mr. Cline is free to question

13  Defendants about why they turned their BodyCams off. Accordingly, the Court OVERRULES Mr.

14  Cline's objection.

15  **2.  Objections Based on the Federal Rules of Evidence**

16  Mr. Cline next objects to Defendants' submission of Ms. Cline's medical records and 2020

17  department policies as irrelevant. Pl.'s Opp'n 1-2. Mr. Cline also objects to characterizations in

18  Defendants' motion regarding his alleged "pre-assaultive behaviors" and "attempt to flee" as not

19  supported by evidence. Pl.'s Opp'n 2. Mr. Cline also objects to Defendants' statement that it was

20  apparent to him that non-compliance would result in the taser being deployed as lacking

21  foundation. *Id.*

22  As to objections to Defendants' arguments in their briefs, they are not evidence and thus

23  not subject to exclusion. Whether the characterization of evidence is reasonable is a different

24  matter and not subject to an evidentiary objection. As to objections to some of the evidence, "[t]o

25  survive summary judgment, a party does not necessarily have to produce evidence in a form that

26  would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of

27  Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting *Block v.*

28  *City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)). At this stage, the focus is on the

admissibility of the contents of the evidence, not its form. *Fraser*, 342 F.3d at 1036; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.") "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser*." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018) (citations omitted). Accordingly, the Court OVERRULES Mr. these evidentiary objections on the basis that the evidence could be presented in an admissible form at trial.

### 3.  Objections to Defendants' Declarations

Finally, Mr. Cline objects to portions of the declarations from Defendant Roberts and Rumrill on the basis that they contradict their prior deposition testimony. Pl.'s Opp'n 2-4.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (citations omitted). "[T]he district court must make a factual determination that the contradiction was actually a 'sham,'" and not the result of "of an honest discrepancy, a mistake, or the result of newly discovered evidence" to find that it does not create a triable issue of fact. *Id.* 266-67.

The Court does not find that the discrepancies in Defendants' declarations rise to the level of being a sham. Mr. Cline is of course welcome to use the deposition transcripts, BodyCam footage, and declarations as impeachment evidence at trial. Accordingly, the Court OVERRULES this objection.

### C.   Mr. Cline's Motion

#### 1.  Lack of Probable Cause to Arrest

Mr. Cline moves for summary judgment on his claim for arrest without probable cause

11

regarding both the arrest for elder abuse, Cal. Penal Code § 368(b)(1), and resisting and obstructing an officer, Cal. Penal Code § 148(a)(1). Pl.'s Mot. 15-18. Mr. Cline argues that Defendants did not have probable cause to arrest him on either charge. *Id.* Defendants argue that Mr. Cline was allowing his mother to suffer, which justifies the arrest for elder abuse, and he both obstructed their investigation into Ms. Cline's injuries and resisted commands once he got out of his car, thus justifying his arrest on the resisting charge. Defs.' Opp'n 7-10, ECF 64. The Court finds that the undisputed evidence shows that there was not probable cause to arrest Mr. Cline for elder abuse, but disputed facts prevent the Court from adjudicating the probable cause to arrest Mr. Cline for resisting and obstructing.

"A warrantless arrest of an individual in a public place for a crime committed in an officer's presence violates the Fourth Amendment if the arrest is not supported by probable cause." *Blankenhorn v. City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). "In California, 'an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.''" *Blankenhorn*, 485 F.3d at 471 (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003)). Federal standards are consistent: "The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *Blankenhorn*, 485 F.3d at 471 (quoting *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005)). "[E]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law *and the information the searching officers possessed*." *Blankenhorn*, 485 F.3d at 471 (emphasis added) (citation omitted).

It is undisputed that Mr. Cline was arrested when he was handcuffed after he was tased. The Court will analyze each section of the penal code separately.

**a.   Cal. Penal Code § 368(b)(1): Elder Abuse**

1

2    Section 368(b)(1) states

A person who knows or reasonably should know that a person is an elder or dependent adult
and who, under circumstances or conditions likely to produce great bodily harm or death,
willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon
unjustifiable physical pain or mental suffering, or having the care or custody of any elder or
dependent adult, willfully causes or permits the person or health of the elder or dependent
adult to be injured, or willfully causes or permits the elder or dependent adult to be placed
in a situation in which his or her person or health is endangered, is punishable by
imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand
dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state
prison for two, three, or four years.

8    Cal. Penal Code § 368(b)(1). As the Court noted at the hearing, the following facts are not in

9    dispute: All relevant injuries occurred 1-3 hours prior to Defendants' arrival. Ex. C, Rumrill Dep.

10   60:21-25, ECF 61-1. Defendant Rumrill did not believe that Mr. Cline caused Ms. Cline's injuries.

11   *Id.* 62:5-13, 108:6-13. The undisputed BodyCam video transcript shows that Mr. Cline relayed his

12   mother's wish not to go to the hospital to Defendant Rumrill, which she quickly reiterated, stating,

13   "I do not want to go to the hospital because they kill you there." Ex. B., BodyCam Tr. 43:9-19,

14   ECF 62-5. It is undisputed that Ms. Cline was lucid and thus not capable of being forced by

15   anyone to accept medical treatment against her will. *Id.* 52:7-9 ("He's not taking her to get

16   medical care. She doesn't want to go. She seems like she's lucid."). Defendant Rumrill also

17   testified that, within the first 25 seconds of engaging Mr. Cline, he said he would take his mother

18   to the hospital. Ex. C, Rumrill Dep. 62:19-21, ECF 61-1. Defendants acknowledged after they had

19   spoken to Ms. Cline and before Mr. Cline got out of his truck that "It would kinda be tough to–to

20   arrest him on a felony or arrest him at all." Ex. B., BodyCam Tr. 57:1-3, ECF 62-5. Despite being

21   mandatory reporters for elder abuse, none of the officers on the scene—Defendant Roberts,

22   Defendant Rumrill, or Supervisor Ainsworth—reported any abuse. Ex. A, Roberts Dep. 25:20-23,

23   ECF 61-1; Ex. C, Rumrill Dep. 129:21-130:30, ECF 61-1; Ex. E, Ainsworth Dep. 58:1-13, ECF

24   69-2.

25       The Court finds Defendants' understanding that Ms. Cline was lucid and thus capable of

26   making her own medical decisions to be the key fact here. No one, not even Mr. Cline, had the

27   right to force her to accept medical care. As such, no reasonable officer could find that he

28   "willfully cause[d] or permit[ted] any elder or dependent adult to suffer." Defendants

acknowledge this with the statement it would be tough to arrest him on a felony or arrest him at all. Ex. A, Roberts Dep. 42:19-24, ECF 61-1. Accordingly, summary judgment is GRANTED on Mr. Cline's claim for arrest without probable cause for elder abuse.

### b. Cal. Penal Code § 148(a)(1): Resisting, Delaying, or Obstructing an Officer

Under Section 148(a)(1), it is unlawful to be a person who "willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician… in the discharge or attempt to discharge any duty of his or her office or employment…" Cal. Penal Code § 148(a)(1). Mr. Cline argues that he did nothing to delay, obstruct or resist the deputies, as he cooperated with the officers throughout the encounter. Pl.'s Mot. 17-18. Defendants have a different opinion and argue that Mr. Cline obstructed their investigation of Ms. Cline's injuries and resisted Defendants after leaving his car. Defs.' Opp'n 8-10; Rumrill Decl. ¶¶ 19-22, ECF 62-2.

Having viewed the BodyCam video and reviewed the transcript, the Court finds that each Party's characterization of the events is plausible and could be credited by a reasonable jury. To the deputies, Mr. Cline lunged at them, squared his shoulders, and reached towards his waistband, which they interpreted as pre-assaultive behaviors, and he ignored six commands to put his hands behind his back. Defs' Mot. 11. He then suddenly turned and reached toward his truck and opened the door. *Id.* To Mr. Cline, the deputies had spent 40 minutes with him and his mother and observed him politely answering their questions. It was clear the Mr. Cline has mental health issues and posed no danger to the deputies. The deputies imposed significant pressure on Mr. Cline to force him to hospitalize his mother, which caused Mr. Cline to become agitated. But the deputies never told Mr. Cline he was under arrest. Mr. Cline had no weapons, was barefoot, and was attempting to retreat to the safety of his truck with he was tased. Pl.'s Opp'n 9-11. The Court finds that disputed issues of fact prevent adjudicating this claim at this stage of the case. Summary judgment is DENIED on Mr. Cline's claim for arrest without probable cause for resisting.

### 2. Excessive Force

Mr. Cline argues that Defendant Roberts's deployment of his taser was an unconstitutional

1    excessive use of force and violated clearly established law. Pl.'s Mot. 18-23. Defendants argue

2    that the single deployment of the taser was a reasonable use of force under the circumstances, and

3    no Defendant violated any clearly established law. Defs.' Opp'n 12-16. The Court finds that

4    disputed issues of fact exist, thus preventing summary judgment.

5          The Fourth Amendment "guarantees citizens the right to be secure in their persons...against

6    unreasonable ...seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal

7    quotation marks omitted) (alteration in original). The "reasonableness" of a particular seizure

8    depends on how it was carried out. *Id.* at 395. "[A]ll claims that law enforcement officers have

9    used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other

10   'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

11   'reasonableness' standard." *Id.* "The 'reasonableness' of a particular use of force must be judged

12   from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

13   hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). Because an inquiry into

14   excessive force "nearly always requires a jury to sift through disputed factual contentions, and to

15   draw inferences therefrom," the Ninth Circuit has held "on many occasions that summary

16   judgment or judgment as a matter of law in excessive force cases should be granted sparingly."

17   *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

18         The Court must assess the severity of the intrusion on Mr. Cline's Fourth Amendment

19   rights by evaluating the type and amount of force inflicted, the government's interest in the use of

20   force, and then finally balance the gravity of the intrusion on the individual against the

21   government's need for that intrusion. *See Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th

22   Cir. 2016), *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). Regarding the second

23   consideration, the government's interest in the use of force, the Court considers three primary

24   factors: "(1) 'whether the suspect poses an immediate threat to the safety of the officers or others,'

25   (2) 'the severity of the crime at issue,' and (3) 'whether he is actively resisting arrest or attempting

26   to evade arrest by flight.'" *Glenn*, 673 F.3d at 872 (quoting *Graham*, 490 U.S. at 396). The most

27   important factor is the threat to the safety of the officers or others. *Smith v. City of Hemet*, 394

28   F.3d 698, 702 (9th Cir. 2005).

United States District Court
Northern District of California

15

Here, the Court finds disputed facts that prevent it from deciding the claim at this time. Mr. Cline has submitted expert testimony from Scott DeFoe, a 27-year veteran of the Los Angeles police department and use of force training deputy for the Riverside Sherriff's Department, and Mr. DeFoe concluded that Defendant Roberts' use of force in deploying his taser was unreasonable in these circumstances. Caballero Decl., Ex. R, Expert Witness Report 24-30, ECF 61-1. Defendants have presented evidence that Mr. Cline posed an immediate threat to the safety of others, and Defendant Roberts used a reasonable amount of force for the circumstances. Decl. of Adam Roberts, ¶¶ 9-19, ECF 62-1. The Court finds that a reasonable jury could decide this question either way.

Regarding whether any Defendant violated clearly established law, the Court finds that it is premature to decide this part of the qualified immunity analysis at this stage of the case with a factual dispute regarding whether Defendant Roberts's use of force was justified. *See Glenn*, 673 F.3d at 870 ("We express no opinion as to the second part of the qualified immunity analysis and remand that issue to the district court for resolution after the material factual disputes have been determined by the jury."); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming a denial of summary judgment on qualified immunity grounds because there were genuine issues of fact regarding whether the officers violated plaintiff's Fourth Amendment rights, which were also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions); *Santos*, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"). Accordingly, summary judgment on this claim is DENIED.

### 3. *Monell* Claim

Mr. Cline seeks summary judgment on his *Monell* claim against the County of Santa Cruz on the basis that the County's failure to train Defendants and the subsequent ratification of the unconstitutional conducted violated his Fourth Amendment rights. Pl.'s Mot. 22-24. The County argues that the Sheriff's office does train its employees regarding elder abuse, and there is not a nexus between elder abuse training and Mr. Cline being tased. Defs.' Opp'n 17-18. The County

1   also argues that there was no constitutional violation to be ratified, so this theory must fail as well.

2   *Id.* 18. The Court finds it premature to grant summary judgment for Mr. Cline on either theory at

3   this time.

4          "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy,

5   practice, or custom of the entity can be shown to be a moving force behind a violation of

6   constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

7   *Monell*, 436 U.S. at 694). "In order to establish liability for governmental entities under *Monell*, a

8   plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was

9   deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

10  indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force

11  behind the constitutional violation.'" *Dougherty*, 654 F.3d at 900 (alterations in original) (quoting

12  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "Failure to train

13  an employee who had caused a constitutional violation can be the basis for section 1983 liability

14  where the failure to train amounts to deliberate indifference to the rights of the person with whom

15  the employee comes into contact." *Long v. City of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir.

16  2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

17         Alternatively, "[a] municipality may be held liable for a constitutional violation if a final

18  policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

19  "To show ratification, a plaintiff must show that the authorized policymakers approve a

20  subordinate's decision and the basis for it."  *Id.* (internal quotation marks and citation omitted).

21  The policymaker must have actual knowledge of the constitutional violation and affirmatively

22  approve of it – a failure to overrule a subordinate's actions is insufficient to support a § 1983

23  claim.  *Id.*

24         The Court will address each theory separately.

25                      **a.  Failure to Train**

26         It is undisputed that the Sheriff's Office has an adult abuse policy. Ex. J, Adult Abuse

27  Policy, ECF 70-2. Mr. Cline argues that the County failed to train Defendant Roberts, Defendant

28  Rumrill, or Supervisor Ainsworth on the department's adult abuse policy, which was the moving

United States District Court
Northern District of California

17

United States District Court
Northern District of California

force behind the excessive force violation. Pl.'s Mot. 22; *see also* Gettleman Decl., Ex. G, Roberts Training Activity, ECF 69-2; Ex. H, Rumrill Training Activity, ECF 69-2; Ex. I, Ainsworth Training Activity, ECF 69-2. This lack of training, Mr. Cline argues, was demonstrated by the fact that none of the deputies understood that, as mandated reporters, they were required to contact Adult Protective Services ("APS") and not just abandon Ms. Cline in the park, and they did not understand their authority to take her into protective custody in order to obtain medical care they felt she needed. Ex. A, Roberts Dep. 25:20-23, ECF 61-1; Ex. C, Rumrill Dep. 129:21-130:30, ECF 61-1; Ex. E, Ainsworth Dep. 58:1-13, ECF 69-2 (mandatory reporting); Ex. A, Roberts Dep. 27:17-24, ECF 61-1; Ex. C, Rumrill Dep. 113:9-11, 114:5-8, 114:20-23, ECF 61-1 (protective custody). This fundamental misunderstanding of the adult abuse policy, Mr. Cline argues, led to the situation that resulted in Mr. Cline being knocked unconscious by the taser. Pl.'s Mot. 22.

Defendants cite the declarations of Defendant Roberts and Defendant Rumrill, which state they attended POST academy training, which trains on elder abuse. Roberts Decl. ¶ 2, ECF 62-1; Rumrill Decl. ¶ 2, ECF 62-2. Defendants have also presented evidence that both Defendants received the Sheriff's Office updated adult abuse policy. Decl. of Daniel Robbins ("Robbins Decl.") ¶ 4, ECF 67. Defendants also present a document that appears to show that a referral was made to APS for Ms. Cline on July 17, 2017, two days after the tasing incident. Robbins Decl. ¶ 2, Ex. 1, APS Referral, ECF 67-1.

Defendants also argue that the identified deficiency in the training program here is too attenuated to the ultimate injury of tasing. Defs.' Opp'n 17-18; *see City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). Here, though, Mr. Cline was arrested for elder abuse, not just resisting the officers. Ex. P, Citation, ECF 69-3. Mr. Cline's argument is the failure to train the officers regarding elder abuse led to him being unconstitutionally tased during his arrest for elder abuse.

The Court finds that the record is unclear on whether Mr. Cline was tased during his arrest for elder abuse or whether he was arrested for resisting, delaying, or obstructing the investigation and then also cited for elder abuse. Caballero Decl., Ex. L, Supplement Incident Report, ECF 61-1; Ex. M, Rumrill Incident Report, ECF 69-3. What is clear is that after he was tased, he was immediately handcuffed and thus under arrest. He was taken to the hospital, treated, and released.

18

He was given a citation and notice to appear for violation of both Penal Code 368(b)(1) and 148(a)(1). Ex. P, Citation, ECF 69-3. Absent resolution of this issue, the Court cannot determine as a matter of law whether failure to train the deputies was the moving force behind the constitutional violation. A reasonable jury could credit either scenario and therefore summary judgment is DENIED on this issue.

### b. Ratification

Mr. Cline argues that the County ratified the unconstitutional conduct when Supervisor Ainsworth authorized Defendants Roberts and Rumrill to arrest Mr. Cline for elder abuse despite knowing that there was insufficient probable cause for an arrest. Pl.'s Mot. 23. Mr. Cline also cites a February 2019 use of force inquiry that was opened after the filing of this complaint. Gettleman Decl., Ex. T, Use of Force Complaint, ECF 69-4. The inquiry exonerated Defendant Roberts. *Id.*; Gettleman Decl., Ex. CC, Brian Cleveland Dep. 47:9-22, ECF 69-5.

The Court finds that Mr. Cline has not presented any evidence that Supervisor Ainsworth was a policymaker and has cited no case law establishing that an investigation undertaken in the course of litigation can support a ratification theory. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (holding that district courts must identify official policymakers based on "state and local positive law, as well as 'custom or usage' having the force of law") (internal quotations omitted). Accordingly, taking the facts in the light most favorable to the non-movant on this motion, summary judgment is DENIED.

### 4. Bane Act Claim

Mr. Cline seeks summary judgment on his Bane Act claim based on the Fourth Amendment violation underlying his Section 1983 claims. Pl.'s Mot. 19-20. Defendants argue that Mr. Cline has not demonstrated any coercion beyond his wrongful arrest, which is required for a Bane Act claim and cite *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (Cal. Ct. App. 2012) to support that proposition. Defs.' Opp'n 19-20. The Court disagrees with Defendants and finds that more recent California and Ninth Circuit cases have clarified that *Shoyoye* does not require any threat, intimidation, or coercion outside of the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) ("*Cornell* correctly notes that the plain

1    language of Section 52.1 gives no indication that the 'threat, intimidation, or coercion' must be

2    independent from the constitutional violation.") (citing *Cornell v. City and County of San*

3    *Francisco*, 17 Cal. App. 5th 766, 795 (Cal. Ct. App. 2017), *as modified* (Nov. 17, 2017)).

4         "The Bane Act civilly protects individuals from conduct aimed at interfering with rights

5    that are secured by federal or state law, where the interference is carried out "by threats,

6    intimidation or coercion." *Reese*, 888 F.3d at 1040 (citing *Venegas v. County of Los Angeles*, 153

7    Cal. App. 4th 1230 (Cal. Ct. App. 2007)). "[T]he elements of the excessive force claim under §

8    52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

9         Defendants' reliance on *Shoyoye* is misplaced—as the Ninth Circuit noted in *Reese*,

10   "*Shoyoye* is distinguishable from Reese's excessive force claim because it involved a claim of

11   wrongful detention." *Reese*, 888 F.3d at 1042. "Moreover, [*Chaudhry v. City of Los Angeles*, 751

12   F.3d 1096, 1105 (9th Cir. 2014)] was decided two years after *Shoyoye* and since the *Chaudhry*

13   decision, district courts have largely interpreted it to mean that section 52.1 does not require a

14   showing of "threats, intimidation and coercion" separate from an underlying constitutional

15   violation." *Reese*, 888 F.3d at 1042 (collecting cases). California appellate courts have done the

16   same, specifically in the excessive force context. *See, e.g.*, *B.B. v. Cty. of Los Angeles*, 25 Cal.

17   App. 5th 115, 134, *rev'd and remanded on other grounds*, 10 Cal. 5th 1 (Cal. 2020).

18        Although the Court disagrees with Defendants' application of the law, because the Bane

19   Act claim relies on the same underlying constitutional violation as the excessive force claim, the

20   Court also finds it premature to adjudicate this claim. Accordingly, for the reasons that the Court

21   denied summary judgment on Mr. Cline's Excessive Force claim, summary judgment is DENIED

22   on the Bane Act claim.

23              **5. Assault**

24        Finally, Mr. Cline seeks summary judgment on his common law assault claim. The Parties

25   agree that state law assault and battery claims have been determined to be a counterpart to a

26   federal claim for excessive force. Pl.'s Mot 24, Defs.' Opp'n 19; *see also Edson v. City of*

27   *Anaheim*, 63 Cal. App. 4th 1269, 1274 (Cal. Ct. App. 1998). Accordingly, for the reasons that the

28   Court denied summary judgment on Mr. Cline's excessive force claim, summary judgment is

1   DENIED on the assault claim.

2       **D.**    **Defendants' Motion**

3       The Court now addresses outstanding issues in Defendants' motion for summary

4   judgment.

5           **1.**  **Prolonged Detention Claim**

6       At the July 29, 2021 hearing, counsel for Mr. Cline withdrew the Fourth Amendment claim

7   for prolonged detention. Accordingly, summary judgment is GRANTED for Defendants on this

8   claim.

9           **2.**  **Claims against Sheriff James Hart**

10       Mr. Cline has brought his claims for unlawful arrest, excessive force, assault, and a Bane

11   Act violation against Defendant James Hart in his official capacity as the Sheriff of Santa Cruz

12   County. *See* 2AC. Defendants argue that Defendant Hart did not personally participate in any of

13   the events, so he should be dismissed from the case. Defs.' Mot 13-14. Mr. Cline responds that he

14   has a valid *Monell* claim against Defendant Hart, but Mr. Cline does not appear to bring his

15   *Monell* claim against Defendant Hart. *See* 2AC ¶¶ 56-67. Regardless, Mr. Cline has not argued or

16   alleged that Defendant Hart was personally involved in the incident or investigation involving the

17   officers' encounter with Mr. Cline. "Where both the public entity and a municipal officer are

18   named in a lawsuit, a court may dismiss the individual named in his official capacity as a

19   redundant defendant." *Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1001 n.6 (N.D. Cal. 2011)

20   (citing *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533 F.3d

21   780, 799 (9th Cir. 1986)). Accordingly, the Court GRANTS Defendants' motion for summary

22   judgment on the claims against Defendant Hart and will DISMISS him from the case.

23           **3.**  **Lack of Probable Cause and Excessive Force Claims**

24       The Court has fully addressed the Parties' arguments regarding the lack of probable cause

25   and excessive force claims. For the reasons stated in reviewing Mr. Cline's motion, summary

26   judgment is DENIED for Defendants on these claims.

27           **4.**  ***Monell* Claim**

28       For the reasons stated above, the Court DENIES summary judgment for Defendants on the

United States District Court
Northern District of California

1  failure to train theory. The County also moves for summary judgment in its favor on the

2  ratification theory.

3          The County argues that the internal incident report that was completed after litigation

4  commenced cannot support a *Monell* claim on a ratification theory. Defs.' Reply 10-11, ECF 71.

5  Mr. Cline argues that the internal incident report is, in fact, sufficient for his ratification theory.

6  Pl.'s Opp'n 22-24.

7          "A mere failure to overrule a subordinate's actions, without more, is insufficient to support

8  a § 1983 claim." *Garcia v. City of Imperial*, No. 08cv2357 BTM(PCL), 2010 WL 3911457, at *1

9  (S.D. Cal. Oct. 4, 2010) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "In other

10  words, in order for there to be ratification, there must be 'something more' than a single failure to

11  discipline or the fact that a policymaker concluded that the defendant officer's actions were in

12  keeping with the applicable policies and procedures." *Garcia*, 2010 WL 3911457, at *2 (citing

13  *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D. Hawaii 2003)). "If that were the law, counties

14  might as well never conduct internal investigations and might as well always admit liability. But

15  that is not the law. The law clearly requires 'something more.'" *Garcia*, 2010 WL 3911457, at *2

16  (quoting *Kanae*, 294 F.Supp.2d at 1191). The Court finds this to ring especially true when the

17  review was conducted after litigation began. The choice cannot be to either admit liability for the

18  underlying violation or automatically establish *Monell* liability on a ratification theory.

19  Accordingly, summary judgment is GRANTED for Defendants on the ratification theory for

20  *Monell* liability.

21              **5.  Bane Act and Assault Claims**

22          For the reasons stated in reviewing Mr. Cline's motion, the Court DENIES summary

23  judgment for Defendants on these claims.

24  **IV.    ORDER**

25          For the foregoing reasons, IT IS HEREBY ORDERED that Mr. Cline's motion is

26  GRANTED IN PART and DENIED IN PART. Defendants' motion is also GRANTED IN PART

27  and DENIED IN PART.

28          1.      Summary judgment is GRANTED for Defendants on the prolonged detention

United States District Court
Northern District of California

claim;

2.     Summary judgment is GRANTED for Mr. Cline on the claim for lack of probable cause to arrest for a violation of California Penal Code § 368(b)(1) (elder abuse) and DENIED for Defendants;

3.     Summary judgment is DENIED on the claim for lack of probable cause to arrest for a violation of California Penal Code § 148(a)(1) (resisting, delaying, or obstructing an officer);

4.     Summary judgment is DENIED on the claim for excessive force

5.     Summary judgment is GRANTED for Defendants on the *Monell* claim for municipal liability on a ratification theory and DENIED for Mr. Cline;

6.     Summary judgment is DENIED on the *Monell* claim for municipal liability on a failure to train theory;

7.     Summary judgment is DENIED on the Bane Act claim;

8.     Summary judgment is DENIED on the assault claim;

9.     Summary judgment is GRANTED on all claims against Defendant James Hart; and

10.     Defendant James Hart is DISMISSED from the case.

Dated: August 5, 2021

_____
BETH LABSON FREEMAN
United States District Judge